| | | | |
|---|---|---|---|
| BRANDON MICHAEL PICKENS, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| ROBERT LEWIS, et al., | ) | **ORDER** | |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 9). See 28 U.S.C. §§ 1915(e)(2); 1915A. On January 20, 2016, the Clerk entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. (Doc. No. 6). Therefore, Plaintiff is proceeding in forma pauperis.

## I.     BACKGROUND

Pro se Plaintiff Brandon Michael Pickens is an inmate of the State of North Carolina, currently incarcerated at Pender Correctional Institution in Burgaw, North Carolina. Plaintiff filed this action on December 9, 2015, pursuant to 42 U.S.C. § 1983, naming the following as Defendants: (1) Robert C. Lewis, identified as the Secretary of the North Carolina Department of Public Safety ("NCDPS"); (2) R. Beddingfield, identified as an Employee of the State of North Carolina Communications Office; (3) John S. Carbone, identified as Director of Mental Health Services of the NCDPS; (4) Donna L. Woodruff, identified as the Assistant Dental Director for the NCDPS; (5) J. Rickman, identified as a Medical Care Employee at Mountain View Correctional Institution; (6) Ken Yearick, identified as a psychiatrist at Mountain View; (7)

1

Susan White, identified as the Superintendent of Mountain View; (8) North Carolina Prison Legal Services, Inc. ("NCPLS"); (9) Elizabeth Albitson, identified as a Staff Attorney for NCPLS; (10) Sarah J. Farber, identified as a Staff Attorney for NCPLS; and (11) Jennie Lancaster, identified as the Secretary of Prisons for NCDPS. In the original Complaint, Plaintiff purported to bring a claim against Defendants for deliberate indifference to serious medical needs while Plaintiff was incarcerated at Mountain View Correctional Institution.

On February 1, 2016, following an initial review, this Court ordered Plaintiff to file an amended complaint, specifying his factual allegations as to each named Defendant. (Doc. No. 8). The Court also dismissed Plaintiff's claims against North Carolina Prison Legal Services, Inc., Elizabeth Albitson, and Sarah J. Farber. (Id. at 7). On February 18, 2016, Plaintiff filed an Amended Complaint, naming the following as Defendants: (1) Robert C. Lewis; (2) John S. Carbone; (3) Donna L. Woodruff; (4) Susan White; (5) J. Rickman; (6) Ken Yearick; (7) Avery County; (8) Jennie Lancaster; (9) and R. Beddingfield. (Doc. No. 9).

In his rambling, twenty-five-page Amended Complaint, Plaintiff appears to be bringing two primary claims against Defendants. First, he contends that the remaining Defendants were deliberately indifferent to his serious medical needs based on Defendants' failure to address and treat appropriately Plaintiff's mental health issues and his dental problems while he was incarcerated at MVCI from August 2012 to December 2012. More specifically, Plaintiff alleges that, before he was transferred to MVCI in August 2012, and while he was still incarcerated at Piedmont Correctional Institution ("PCI"), he had made an appointment for the filling of two cavities. Plaintiff alleges that he transferred to MVCI before the cavities were filled at PCI. Plaintiff alleges that once he was transferred to MVCI Defendants refused to set up an appointment for Plaintiff to have his cavities filled. Plaintiff alleges that Defendants Lewis,

Lancaster, White, Rickman, and Woodruff "were aware that Plaintiff . . . had 2 cavities that needed fillings and that Plaintiff had been on the waiting list since he missed his dental appointment at PCI on 8/13/2012, however, Defendants failed to respond reasonably to Plaintiff's dental care needs." (Id. at 20). Plaintiff alleges that while at MVCI, medical staff at MVCI put him on a waiting list for his fillings, and that when he was transferred away from MVCI to Scotland Correctional Institution ("SCI") on or around the end of December 2012, he still had not received his dental fillings. (Id. at 18). Plaintiff alleges, "upon information and belief," that once he was at SCI, SCI staff advised him "that my cavities were beyond repair and could not be fixed with fillings and had to be extracted when I finally got a chance to receive my fillings." (Id. at 19).

As to his mental health problems, Plaintiff alleges that, while at PCI, and before he was transferred to MVCI, he was taking psychiatric medications. Plaintiff alleges that his doctor at PCI discontinued the medications before he was transferred to MVCI, but with the advice to Plaintiff to complete a mental health request form at MVCI should be feel that he needed to start taking psychiatric medications again. (Id. at 4). Plaintiff alleges that, while at MVCI, he told mental health staff that he was having thoughts of hurting others and that he was hearing voices. Plaintiff alleges that he told mental health staff, including Defendant Yearick, that he needed to be placed back on various medications for these reasons, but that staff refused to put him back on medications for his mental health issues. See (Id. at 6; 8; 9). Plaintiff alleges that he also received a response letter from Defendant Carbone informing Plaintiff that Carbone could not guarantee that Plaintiff would be placed back on his mental health medications and that Carbone was forwarding a copy of Plaintiff's letter requesting mental health medications to MVCI staff. See (Id. at 12-13). Plaintiff alleges that Defendants Lewis, Carbone, Yearick, and White "were

3

aware of [Plaintiff's] mental health issues and further knew that Plaintiff was taking psychiatric medications, in which he made efforts to be placed back on, but failed to continue Plaintiff's medications and accommodate his mental health needs." (Id. at 20). As to Defendant Benningfield, Plaintiff alleges that he received a letter from Benningfield in November 2012, in which Benningfield referenced another letter from Plaintiff to Defendant Lancaster that "addressed numerous problems. Benningfield advised me that my letter was forwarded to Ms. White for review and disposition." (Id. at 13).

Finally, Plaintiff lists numerous grievances filed by him against various staff at MVCI, and he also refers to various disciplinary actions brought against him. He appears to be attempting to bring a First Amendment and/or retaliation claim against Defendants based on their handling of Plaintiff's various grievances and disciplinary actions taken against him. To support this claim, Plaintiff alleges that Defendants Lancaster, Lewis, Benningfield, and White "were aware that [Plaintiff] was being subjected to numerous events that, taken as a whole, amounted to a campaign of harassment and failed to correct the misconduct relating to those events violated Plaintiff's First Amendment rights to the U.S. Constitution. The numerous events in question were taken subsequent to Plaintiff filed a grievance [sic] against Sergeant Thomas." (Id. at 21). Plaintiff further alleges that Defendants Lancaster, Lewis, and Avery County "enforced policies and customs that prevent [Plaintiff] from obtaining meaningful access to the courts." (Id.).

Based on the above factual allegations, Plaintiff purports to allege an Eighth Amendment claim against Defendants for deliberate indifference to serious medical needs, as well as a First Amendment and/or retaliation claim. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (Id. at 22-23).

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint

to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious

[or] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).  Furthermore,

under § 1915A the Court must conduct an initial review and identify and dismiss the complaint,

or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which

relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an

indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such

as fantastic or delusional scenarios.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

Furthermore, a pro se complaint must be construed liberally.  Haines v. Kerner, 404 U.S. 519,

520 (1972).  However, the liberal construction requirement will not permit a district court to

ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable

under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III.     DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical

treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.

Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To state a claim under the Eighth Amendment, a

plaintiff must show a "deliberate indifference to serious medical needs" of the inmate.  Id.

"Deliberate indifference requires a showing that the defendants actually knew of and disregarded

a substantial risk of serious injury to the detainee or that they actually knew of and ignored a

detainee's serious need for medical care."  Young v. City of Mt. Ranier, 238 F.3d 567, 575-76

(4th Cir. 2001) (citations omitted).  "To establish that a health care provider's actions constitute

deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

As to Plaintiff's purported First Amendment and/or retaliation claim, claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct."

Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).

The Court first finds that Plaintiff's claims for declaratory and injunctive relief have been rendered moot since Plaintiff has been transferred away from MVCI. See Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). As to the remaining Defendants and claims, taking Plaintiff's allegations as true for the purposes of initial review, the Court finds that Plaintiff's claims survive initial review in that they are not clearly frivolous.[1]

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Amended Complaint, (Doc. No. 9), survives initial review under § 1915(e) and 28 U.S.C. § 1915A.

2. The Clerk shall send Plaintiff summons forms to fill out so that service may be made on Defendants. Once the Court receives the summons, the U.S. Marshal shall effectuate service on Defendants at the addresses provided by Plaintiff.

---

[1] The Court notes that Plaintiff's First Amendment and/or retaliation claim, in particular, survives on a very thin reed on this Court's frivolity review.

Frank D. Whitney
Chief United States District Judge