UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cv-275-FDW

| BRANDON MICHAEL PICKENS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT LEWIS, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant John Carbone, (Doc. No. 64).

**I.     BACKGROUND**

Pro se Plaintiff Brandon Michael Pickens is a North Carolina prisoner currently incarcerated at Lanesboro Correctional Center in Polkton, North Carolina. (Doc. No. 9 at 2). Plaintiff filed his verified Complaint on December 2, 2015. (Doc. No. 1 at 11). On February 1, 2016, the Court conducted a frivolity review and determined that Plaintiff's claims were not sufficiently pled and, therefore, ordered Plaintiff to amend his Complaint. (Doc. No. 8). On February 18, 2016, Plaintiff filed a verified Amended Complaint. (Doc. No. 9).

Plaintiff alleges in the Amended Complaint that he was transferred from Piedmont Correctional Institution ("Piedmont") to Mountain View Correctional Institution ("MVCI") on August 13, 2012. (Doc. No. 9 at ¶ 17, p. 4). Plaintiff alleges that, while at MVCI between August 2012 and December 2012, he was denied dental care and that prison medical staff at MCVI refused his requests for certain mental health medications. (Id. at ¶¶ 20, 25, 31, pp. 5, 6,

1

8). Plaintiff sent a letter dated November 7, 2012, addressed to the Director of Prisons Robert Lewis. (Id. at ¶ 49, p. 12). Plaintiff's letter complained that he was unhappy that medication he had been prescribed while incarcerated at the county jail was not continued upon his incarceration with NCDPS at MCVI. See (Doc. No. 9-31: Ex. EE).

Plaintiff alleges that Defendant Carbone was the "Director of Mental Health Services for the" NCDPS at all times relevant to the allegations in the Amended Complaint. (Doc. No. 9, ¶ 5 at 2). Plaintiff's sole allegations addressing the actions of Defendant Carbone include the following:

> … John S. Carbone responded to a letter addressed to Robert Lewis that was dated 11/7/2012, and addressed issues concerning the mental health care I complained about. (See Exhibit EE). John S. Carbone's response stated that there is no guarantee that I would be placed back on my mental health medications and that he was forwarding a forwarding a copy of his letter to staff at MVCI, so that they can address my concerns with me in person. (See Ex. EE). Copies of his response was sent to both Robert Lewis and Ken Yearick. (See Ex. EE). However, Ken Yearick never met with me to address these concerns subsequent to receiving Carbone's response.

(Id. at ¶ 49, pp. 12-13). Plaintiff attached to the Amended Complaint the response letter from Dr. Carbone dated November 26, 2012. (Doc. No. 9-31 at 1). Defendant Carbone states in the letter, in part:

> prison clinicians review each inmate for ongoing need for Rx, and having been prescribed certain agents in the past is not a guarantee that they will be continued in the future. With that in mind, I ask that you speak with your mental health providers about these concerns. To that end, I am forwarding a copy of this letter to staff at MVCI so that they can address your thoughts with you further in person.

(Id.). Plaintiff does not allege that Defendant Carbone was directly involved in his medical care in any fashion before or after this correspondence or that Defendant Carbone denied necessary medical care to Plaintiff. See (Doc. No. 9 and attached exhibits). Nor does Plaintiff allege that

2

Defendant Carbone deliberately interfered with his medical care or that Defendant Carbone "tacitly authorized" or was "indifferent" to constitutional violations by his subordinates. Plaintiff's allegations relating to Defendant Carbone involve only the single letter, dated November 26, 2012.

Defendant Carbone filed the pending summary judgment motion on May 16, 2017, seeking summary judgment against Plaintiff based on failure to exhaust administrative remedies.[1]  (Doc. No. 64).  On May 26, 2017, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  (Doc. No. 72).  Plaintiff filed a response to the summary judgment motion on June 2, 2017.  (Doc. No. 74).  Defendant filed a reply to Plaintiff's response on June 22, 2017.  (Doc. No. 77).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] Defendant Carbone alternatively requests that the Court dismiss Plaintiff's claim against him as barred by the applicable statute of limitations.  In addition, Defendant argues that Plaintiff's deliberate indifference claim against him should be dismissed because Plaintiff's Amended Complaint fails to allege that Defendant Carbone, through his own individual actions, violated Plaintiff's Eighth Amendment rights and Defendant Carbone is entitled to qualified immunity. Defendant Carbone also moves, pursuant to Rule 12(b)(6), to dismiss Plaintiff's claims for compensatory and punitive damages asserted against him in his official capacity, Plaintiff's claims for injunctive relief, and Plaintiff's claim for punitive damages asserted against him in his individual capacity.

A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III.    DISCUSSION**

In support of his summary judgment motion, Defendant Carbone contends that Plaintiff did not exhaust his administrative remedies as to his claim against Carbone. For the following reasons, the Court agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his

administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524).

Finally, the Supreme Court recently reiterated that, when pursuing administrative remedies, the PLRA only requires that inmates exhaust "available" remedies. 42 U.S.C. § 1997e(a). Under the PLRA, "available" means "capable of use to obtain some relief for the action complained of." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (internal quotation marks omitted). In Ross, the Supreme Court recognized three potential situations that render administrative remedies not "available" to a complaining inmate. 136 S. Ct. at 1859-60. First,

"an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. For instance, "where the relevant administrative procedure lacks authority to provide any relief, the inmate has nothing to exhaust." Id. (internal quotation marks omitted). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. Third, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860. Finally, it is well settled that "[t]he burden of showing that administrative remedies were unavailable lies with the plaintiff." Mann v. Scott, Civ. Action No. 0:14-3474, 2015 WL 5165198, at *4 (D.S.C. Sept. 1, 2015).

This Court finds that Defendants have presented evidence on summary judgment showing that Plaintiff did not fulfill his obligation under the PLRA to provide Defendant Carbone with fair notice of his claim by exhausting his administrative remedies as to Defendant Carbone. That is, the records of the North Carolina Inmate Grievance Resolution Board (the "Board") and the affidavit of the Board's Executive Director Finesse Couch establish that Plaintiff failed to properly exhaust his available administrative remedies relating to his claim against Defendant Carbone before bringing this action. See (Doc. No. 65: Couch Aff.). As noted, Plaintiff's sole allegation pertaining to Defendant Carbone relates to Defendant Carbone's written correspondence to Plaintiff dated November 26, 2012. See (Doc. No. 9, ¶ 49, pp. 12-13; Doc. No. 9-31). It is well settled that a grievance does not have to mention a defendant by name as long as the grievance gives the defendant fair notice of the claim. See Moore v. Bennette, 517

6

F.3d 717, 729 (4th Cir. 2008). Here, however, the grievance records submitted by Plaintiff fail to identify any conduct whatsoever by Defendant Carbone, nor do they mention Defendant Carbone.[2]

The record on summary judgment shows that Plaintiff was transferred to MVCI on August 13, 2012, and his original Complaint was filed on December 9, 2015. Between the date that he entered NCDPS as an inmate in July 2013 until he filed his initial Complaint, Plaintiff filed 31 grievances that proceeded through Step Three of the appeals process. (Doc. No. 65 at ¶ 4: Couch Aff., Exs. A-EE). None of these exhausted grievances provided fair notice of, or the opportunity to address, Plaintiff's allegations against Defendant Carbone. Specifically, three were originally submitted to prison officials before Defendant Carbone's letter of November 26, 2012. (Id. at Exs. A-C). Furthermore, none of Plaintiff's remaining grievances put Defendant Carbone or other prison officials on fair notice that Plaintiff was complaining about any conduct by Defendant Carbone. (See id.). Indeed, only two of the grievances even address, albeit indirectly, Plaintiff's mental health medications, (see id. at Exs. K and L), and none mention Defendant Carbone, his letter, of November 26, 2012, or the mental health medications prescribed for Plaintiff at MVCI.

---

[2] Moreover, as Defendant notes, the Fourth Circuit has also held that, where a North Carolina prisoner files suit complaining of inadequate care relating to more than one medical condition (such as both lack of proper dental care and medications for mental health, in this case), dismissal is appropriate where the underlying grievance did not provide a "fair opportunity" for NCDPS officials to investigate and address the purported inadequate treatment pertaining to each alleged medical condition. See id. at 728-29 (affirming dismissal based on exhaustion where the plaintiff's grievances concerning his medical care for pancreatic illness and Hepatitis C did not alert prison officials to his additional gout problem, stating that allowing plaintiff "to bring suit for alleged inadequate treatment of his gout would not serve the purposes behind the exhaustion requirement").

[3] According to Plaintiff's inmate records on the NCDPS website, Plaintiff's incarceration began on July 20, 2012.

7

Plaintiff has failed to come forward in his response to the summary judgment motion with any competent, admissible evidence to contravene Defendant Carbone's affidavit evidence that Plaintiff failed to exhaust his available administrative remedies before bringing this action.[4] Instead, Plaintiff provides an unsworn, conclusory allegation that he purportedly filed "a grievance that addressed issues relating to Carbone's failure to re-order my medications per my request," but that the purported grievance was "never processed" because unidentified "prison staff," at unidentified times, at unidentified NCDPS facilities, were allegedly "violating Administrative Remedy Procedures in order to hinder grievances filed by [Plaintiff]." (Doc. No. 74 at ¶¶ 12, 13, p. 3). Plaintiff fails to provide sufficient facts to support a finding that prison officials interfered with his ability to exhaust his administrative remedies as to his claim against Defendant Carbone. Importantly, Plaintiff fails to identify when he purportedly filed the grievance, where he was housed when he purportedly submitted the grievance, who he allegedly submitted the grievance to, and how the unidentified "prison staff" were purportedly "violating" the NCDPS's Administrative Remedy Procedure ("ARP"). Courts within the Fourth Circuit (and in sister circuits) hold that unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the

---

[4] In his response, Plaintiff does not dispute Defendant's alternative arguments that Plaintiff's claim against Defendant Carbone is also barred by the applicable statute of limitations, that his claim against Defendant Carbone in his official capacity is barred by the Eleventh Amendment, that his request for injunctive relief is moot, and that Plaintiff failed to adequately plead entitlement to punitive damages in the Amended Complaint. See (Doc. No. 74). Accordingly, the Court may infer that Plaintiff does not oppose these alternative grounds for dismissal of Plaintiff's claims against Defendant Carbone. Furthermore, the Court finds as persuasive Defendant's alternative argument that Plaintiff's claim against him is barred by the statute of limitations and on the merits. Because the Court is dismissing Plaintiff's claim against Defendant Carbone without prejudice for failure to exhaust, however, the Court does not address Defendant's alternative grounds for dismissal.

8

alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment. See Barnett v. Alamance Cnty. Sheriff Office Det. Ctr., No. 1:14CV732, 2016 WL 1389606, at *2 (M.D.N.C. Apr. 7, 2016) (holding that prisoner-plaintiff's conclusory allegation that "[m]edical Staff refused to allow [him] to receive a medical grievance" did not raise genuine issue of material fact and dismissing plaintiff's § 1983 claim for failure to exhaust administrative remedies); Stohl v. Eastern Reg'l Jail, No. 1:14CV109, 2015 WL 5304135, at *7 (N.D. W.Va. Sep. 8, 2015) (holding that prisoner-plaintiff's conclusory allegation that unnamed prison staff "discarded" his grievances "not only is unsupported by any evidence in the record, but is belied" by prisoner-plaintiff's successful filing of other grievances during same time period); Salazar v. Holder, No. 3:14CV23, 2015 WL 574800, at *5 (N.D. W.Va. Feb. 11, 2015) (overruling prisoner-plaintiff's objections that grievance procedures were "unavailable" when such objections were "limited to naked assertions without any specificity or evidentiary support"); Humphrey v. Revell, No. 5:11-CT-3168-FL, 2014 WL 1096262, at *5 (E.D.N.C. Mar. 19, 2014) (dismissing claim for failure to exhaust administrative remedies because pro se prisoner-plaintiff failed to allege specific facts "reflecting that any prison official prevented him from exhausting [his] claim"); Al-Mujahidin v. Harouff, No. 9:11-2964-MGL, 2013 WL 4500446, at *7 (D.S.C. Aug. 21, 2013) (holding that prisoner-plaintiff was "not entitled to avoid summary judgment simply by asserting a conclusory and unsupported allegation that his grievances were destroyed or not processed, particularly in light of documentary evidence to the contrary"); McMillian v. N.C. Cent. Prison, No. 5:10-CT-3037-FL, 2013 WL 1146670, at *5 (E.D.N.C. Mar. 19, 2013) (holding that prisoner-plaintiff's "unsubstantiated and conclusory allegations that his grievances were not accepted by staff, without providing any details regarding the date the alleged grievances were submitted or to

whom they were submitted, are insufficient to refute defendants' arguments in support of their exhaustion defense."), aff'd, 534 F. App'x 221 (4th Cir. 2013); Goodwin v. Beasley, No. 1:09CV151, 2011 WL 835937, at *3 (M.D.N.C. Mar. 3, 2011) (holding that "Plaintiff's conclusory allegations that prison officials did not cooperate with him and that the grievance process at the jail was defective are not enough to excuse his failure to exhaust").

Furthermore, the evidence on summary judgment shows that between August 2012 and December 2012 while he was housed at MVCI, Plaintiff submitted six grievances, three of which Plaintiff appealed through Step Three. See (Doc. No. 65-3 and Slagle Aff., Ex. 1 (Grievance 4855-2012-706, submitted August 26, 2012); Doc. No. 65-4 and Slagle Aff., Ex. 2 (Grievance 4855-2012-838, submitted October 8, 2012); Doc. No. 65-5 and Slagle Aff., Ex. 3 (Grievance 4855-2012-991, submitted November 30, 2012). The six grievances submitted and processed during the time period that Plaintiff was housed at MVCI "establish beyond peradventure that he: (1) knew how to properly use the grievance procedure; (2) had successfully used it in the past; (3) failed to use it regarding" his § 1983 claim against Defendant Carbone relating to Defendant Carbone's letter of November 26, 2012; and (4) "filed suit in federal court without having exhausted his administrative remedies." Stohl, 2015 WL 5304135, at *6. Accordingly, Plaintiff's naked assertion that unnamed "prison staff" were somehow "violating Administrative Remedy Procedures in order to hinder grievances filed by myself, including the grievance in question," (Doc. No. 74 at 3), lacking specificity or evidentiary support, is entirely insufficient to raise a genuine issue of material fact that the ARP was "unavailable" to Plaintiff at MVCI. Indeed, in his Amended Complaint, Plaintiff alleges that he "used the prison grievance procedure available at MVCI to try and solve the problems presented by the facts relating to this Complaint." (Doc. No. 9, ¶ 70, p. 19). Thus, Plaintiff concedes, in his Amended Complaint, that

10

the prison grievance procedure was "available" to him at MVCI. (Id.).

Here, as other courts have noted in similar cases, "allowing [Plaintiff] to circumvent the exhaustion requirement in the PLRA under the circumstances presented here would create an exception that would swallow the rule." Stohl, 2015 WL 5304135, at *7. Holding otherwise would allow future prisoner-plaintiffs to side-step Congress's mandatory exhaustion requirement by merely asserting, without any evidence or specificity, that unnamed "prison staff" purportedly failed to process an alleged grievance submitted at an unspecified time at an unspecified location to an unspecified individual regarding an unspecified action, incident, policy, or condition because unnamed "prison staff" were violating unspecified provisions of the ARP. Indeed, there is no evidence in this action, or even a reasonable inference, that Plaintiff was thwarted from filing a grievance. In sum, Plaintiff's failure to comply with the PLRA and fully exhaust his administrative remedies is fatal to his claim against Defendant Carbone, and the Court will therefore grant Defendant Carbone's summary judgment motion.

## IV. CONCLUSION

In sum, for the reasons stated herein, the Court grants the summary judgment motion of Defendant Carbone.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Carbone's Motion for Summary Judgment, (Doc. No. 64), is **GRANTED**, and Plaintiff's claim against Carbone is dismissed without prejudice for failure to exhaust administrative remedies.

2. The Clerk is instructed to terminate John Carbone as a Defendant in this action.

3. The Clerk is also instructed to change Plaintiff's listed address on the docket report to reflect that he is currently incarcerated at Lanesboro Correctional Institution.

.

Signed: August 1, 2017

Frank D. Whitney
Chief United States District Judge